**No. 25-2372**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

City of Baltimore ex rel. Ebony Thompson,
*Plaintiff-Appellee*,

v.

DraftKings Inc.; Flutter Entertainment PLC, d/b/a FanDuel, Inc., an Irish Corporation,
*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Maryland, Case No. 1:25-cv-01487-SAG, Hon. Stephanie A. Gallagher

# OPENING BRIEF OF DEFENDANTS-APPELLANTS

Richard R. Patch
Christopher J. Wiener
Sarah E. Peterson
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street,
Suite 3000
San Francisco, CA 94104
(415) 391-4800
ef-rrp@cpdb.com

*Attorneys for Defendant-Appellant DraftKings Inc.*

Sarah E. Harrington
Jeffrey E. Sandberg
Gary Rubman
Nicole Agama
Ryan S. Sandler
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
sharrington@cov.com

*Attorneys for Defendant-Appellant Flutter Entertainment PLC*

## FRAP 26.1 DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, Flutter Entertainment plc ("Flutter") states that named Defendant "Flutter Entertainment plc d/b/a FanDuel, Inc.," does not exist as an entity. Flutter is an Irish corporation headquartered in Dublin, Ireland. Flutter is a publicly traded corporation, with no entity owning more than 10% of its stock.

Pursuant to FRAP 26.1 and Local Rule 26.1, DraftKings Inc. ("DraftKings") states that DraftKings is a Nevada corporation with its principal place of business in Massachusetts. DraftKings is not owned by a parent company. DraftKings is publicly traded, with no entity owning more than 10% of its stock.

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 3

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW .......... 4

STATEMENT OF THE CASE .......... 4

A. Factual Background .......... 4

1. Baltimore's Consumer Protection Ordinance .......... 4

2. Enforcement of the Ordinance .......... 7

B. Procedural History .......... 9

C. District Court's Decision .......... 11

SUMMARY OF ARGUMENT .......... 13

STANDARD OF REVIEW .......... 17

ARGUMENT .......... 17

I. Federal Courts Must Exercise the Jurisdiction Conferred by Congress, Subject Only to "Extraordinary" Exceptions Not Applicable Here. .......... 18

II. *Burford* Abstention Does Not Apply Here. .......... 22

A. This case does not implicate review or enforcement of any "complex state administrative processes." .......... 23

B. This case does not satisfy the other prerequisites for *Burford* abstention established by the Supreme Court. .......... 28

1. This case presents no "difficult," "transcend[ent]" questions of state law. .......... 29

2. There is no risk that the federal district court will "disrupt[] … state efforts to establish a coherent policy" in this case .......... 37

C. The relief requested precludes abstention. .......... 41

III. The District Court Erred In Refusing Jurisdiction. ....................... 43

A. Maryland's "strong state interest" in gambling regulation is neither threatened here nor sufficient for abstention. ....................... 45

B. The novelty of the Ordinance is irrelevant. ....................... 48

C. This Court's decision in *Johnson v. Collins Entertainment Co.* does not justify abstention here. ....................... 50

CONCLUSION ....................... 55

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anne Arundel County v. Express Scripts, Inc.*,
No. CV MJM-24-90, 2025 WL 254807 (D. Md. Jan. 21, 2025) .......... 35

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) .......... 35

*Bowers v. Legum & Norman Realty, Inc.*,
776 F. Supp. 3d 294 (D. Md. 2025) .......... 30

*Bowman v. Select Portfolio Servicing, Inc.*,
704 F. Supp. 3d 633 (D. Md. 2023) .......... 30

*Bryan v. BellSouth Commc'ns*,
377 F.3d 424 (4th Cir. 2004) .......... 3

*Bryant v. Koppers, Inc.*,
627 F. Supp. 3d 466 (D. Md. 2022) .......... 30

*Bryant v. Koppers, Inc.*,
No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023) .......... 30

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) .......... *passim*

*Casey v. F.D.I.C.*,
583 F.3d 586 (8th Cir. 2009) .......... 32

*Chambers v. King Buick GMC, LLC*,
43 F. Supp. 3d 575 (D. Md. 2014) .......... 31, 32

*Chicot County v. Sherwood*,
148 U.S. 529 (1892) .......... 19

*City of Tucson v. U.S. W. Commc'ns, Inc.*,
284 F.3d 1128 (9th Cir. 2002) .......... 38

*Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub. Co.*,
501 A.2d 48 (Md. 1985) .......... 30

*Consumer Prot. Div. v. Morgan*,
874 A.2d 919 (Md. 2005) .......... 42

*Cooper v. I.Q. Data Int'l, Inc.*,
No. CV RDB-24-2120, 2025 WL 1827956 (D. Md. July 2, 2025) .......... 30

*Country Vintner of North Carolina, LLC v. E&J Gallo Winery, Inc.*,
461 F. App'x 302 (4th Cir. 2012) .......... 31

*County of Suffolk v. Long Island Lighting Co.*,
907 F.2d 1295 (2d Cir. 1990) .......... 27

*Crear v. JP Morgan Chase Bank N.A.*,
No. 10-10875, 2011 WL 1129574 (5th Cir. Mar. 28, 2011) .......... 32

*Deal v. Tugalo Gas Co.*,
991 F.3d 1313 (11th Cir. 2021) .......... 40

*DeLeon v. DraftKings, Inc.*,
No. 25-cv-644, 2025 WL 3551627 (S.D.N.Y. Dec. 11, 2025) .......... 41

*Educ. Servs., Inc. v. Maryland State Bd. For Higher Educ.*,
710 F.2d 170 (4th Cir. 1983) .......... 38

*Elec. Reliability Council of Texas, Inc. v. Just Energy Texas, L.P.*,
57 F.4th 241 (5th Cir. 2023) .......... 27

*England v. Louisiana State Bd. of Med. Examiners*,
375 U.S. 411 (1964) .......... 18

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......... 33

*First Penn-Pac. Life Ins. Co. v. Evans*,
304 F.3d 345 (4th Cir. 2002) .......... 26, 55

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
15 F.4th 70 (1st Cir. 2021) .......... 27

*Grace Ranch, L.L.C. v. BP Am. Prod. Co.*,
989 F.3d 301 (5th Cir. 2021) .......... *passim*

*Harper v. Pub. Serv. Comm'n*,
396 F.3d 348 (4th Cir. 2005) .......... 21

*Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*,
421 F.3d 835 (9th Cir. 2005) .......... 27

*Johnson v. Collins Ent. Co.*,
199 F.3d 710 (4th Cir. 1999) .......... *passim*

*Johnson v. Collins Ent. Co.*,
204 F.3d 573 (4th Cir. 2000) .......... *passim*

*Jones v. Specialized Loan Servicing, LLC*,
No. CV RDB-22-1987, 2023 WL 1442435 (D. Md. Feb. 1, 2023) .......... 30

*Lusko v. Newrez, LLC*,
No. CV GLR-23-3168, 2024 WL 3618507 (D. Md. Aug. 1, 2024) .......... 30

*Martin v. Stewart*,
438 F. Supp. 2d 603 (D.S.C. 2006) .......... 53

*Martin v. Stewart*,
499 F.3d 360 (4th Cir. 2007) .......... *passim*

*Martinez v. Amazon.com Servs. LLC*,
338 A.3d 636 (Md. 2025) .......... 35

*Martinez v. Amazon.com Servs. LLC*,
No. CV 22-00502-BAH, 2024 WL 4817214 (D. Md. Nov. 18, 2024) .......... 35

*Meredith v. City of Winter Haven*,
320 U.S. 228 (1943) .......... 26, 33, 49

*Mitcheson v. Harris*,
955 F.2d 235 (4th Cir. 1992) ........ 47

*MLC Auto., LLC v. Town of S. Pines*,
532 F.3d 269 (4th Cir. 2008) ........ 37

*New Orleans Pub. Serv., Inc.* (*NOPSI*) *v. Council of City of New Orleans*,
491 U.S. 350 (1989) ........ *passim*

*Pittman v. Cole*,
267 F.3d 1269 (11th Cir. 2001) ........ 36

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ........ 52

*Prince v. Harbor Bank of Balt.*,
No. CV MJM-23-2403, 2024 WL 3360658 (D. Md. July 9, 2024) ........ 30

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ........ *passim*

*Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*,
92 F.4th 330 (1st Cir. 2024) ........ 36

*Roberts v. Equian, LLC*,
793 F. Supp. 3d 643 (D. Md. 2025) ........ 30

*S. California Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir. 2002) ........ 36

*SEC v. Jarkesy*,
603 U.S. 109 (2024) ........ 42

*Shook v. NCG Acquisition, LLC*,
114 F.4th 242 (4th Cir. 2024) ........ 33

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ........ 11

*Time Warner Cable v. Doyle*,
66 F.3d 867 (7th Cir. 1995) ........ 32

*Town of Nags Head v. Toloczko*,
728 F.3d 391 (4th Cir. 2013) .......... 39

*Tull v. United States*,
481 U.S. 412 (1987) .......... 42

*Wm. Powell Co. v. Nat'l Indem. Co.*,
18 F.4th 856 (6th Cir. 2021) .......... 26

*Wright v. Willow Lake Apts. (MD) Owner, LLC*,
648 F. Supp. 3d 647 (D. Md. 2023) .......... 30

*Zablocki v. Redhail*,
434 U.S. 374 (1978) .......... 21

**Constitutional Provisions**

Maryland Const. art. XI-A, § 3 .......... 6

U.S. Const. art. III,
§ 1 .......... 47
§ 2 .......... 22, 47

**Statutes**

15 U.S.C. § 45 .......... 5

28 U.S.C.
§ 1291 .......... 3, 4
§ 1332 .......... *passim*

Balt. City Code art. 2,
§ 4-1 .......... 5, 30
§ 4-2 .......... 5, 6
§ 4-3 .......... 6, 43
§ 4-5 .......... 6

City of Baltimore Ordinance No. 23-266 (2023) .......... 4

Md. Code Ann., Com. Law
§ 13-101 .......... 5
§ 13-105 .......... 5

Md. Code Ann., Com. Law
§ 13-301 .......... 5
§ 13-303 .......... 5, 30
§ 13-406 .......... 6
§ 13-408 .......... 6

Md. Code Ann., Courts § 12-603 .......... 35

**Other Authorities**

Compl., *Mayor & City Council of Balt. v. Philip Morris*, No. 25-cv-2177 (D. Md. July 7, 2025), ECF No. 1-2 .......... 7

Erwin Chemerinsky, *Federal Jurisdiction* § 12.2.3 (9th ed. 2025) .......... 22

Fed. R. App. P. 4(a)(1)(B) .......... 3

Hallie Miller, *Baltimore City Council Members Approve Consumer Protection Bill*, Balt. Banner (Sept. 18, 2023) .......... 6

Mot. to Remand, *Mayor & City Council of Balt. v. MoneyLion Technologies*, No. 25-cv-03692 (D. Md. Dec. 10, 2025), ECF No. 27 .......... 8

Mot. to Remand, *Mayor & City Council of Balt. v. Philip Morris*, No. 25-cv-2177 (D. Md. Aug. 6, 2025), ECF No. 19 .......... 8

Press Release, *Mayor Scott Signs Bill to Broaden Consumer Protection in Baltimore* (Oct. 11, 2023) .......... 4

William Baude et al., *Hart & Wechsler's The Federal Courts and the Federal System* 1400 (8th ed. 2025) .......... 22

## INTRODUCTION

This appeal arises from one of several recent cases in which the Mayor and City Council of Baltimore (the City) seek to deprive out-of-State defendants of their statutory right to a federal forum by incorrectly invoking *Burford* abstention, an exception to federal jurisdiction that applies in only rare and extraordinary circumstances.

Defendants operate FanDuel and DraftKings, two popular online sports-betting services available in many States, including Maryland.[1] The City alleges that certain aspects of Defendants' businesses, including their new-customer incentives and loyalty programs, constitute "unfair, abusive, or deceptive" trade practices. Seeking substantial civil penalties and injunctive relief, the City filed suit in the Circuit Court for Baltimore City. Defendants, which are not Maryland residents, removed this suit to federal court, as Congress has expressly permitted by vesting the federal courts with diversity jurisdiction. *See* 28 U.S.C. § 1332. Upon removal, the City did not contest that federal jurisdiction exists, but

[1] As noted (*see supra* at ii), "Flutter Entertainment PLC d/b/a FanDuel Inc." is not an entity that exists. The entity that operates FanDuel in Maryland is Betfair Interactive US LLC. *See* JA010 n.2. Flutter has so notified the City, which has indicated that it will move to amend the complaint.

nonetheless moved to remand to state court, invoking, as its sole basis, *Burford* abstention.

The district court seriously erred in accepting that invitation to surrender its jurisdiction. A federal court's duty to hear cases properly brought before it is "virtually unflagging." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). *Burford* abstention is an "extraordinary and narrow" exception to the constitutional and statutory duty of federal courts to exercise their congressionally conferred jurisdiction. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)). The exception applies only where litigating the claims in a federal forum would interfere with "'complex state administrative processes.'" *Id.* It requires a "difficult," "transcend[ent]" state-law issue, or a showing that the federal court will disrupt a uniform state regulatory system. *New Orleans Pub. Serv., Inc.* (*NOPSI*) *v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). And it can justify the surrender of federal jurisdiction only in cases involving purely equitable or other discretionary relief.

This case—a standard consumer protection dispute—meets none of those threshold prerequisites, much less represents the type of dispute

warranting discretionary invocation of *Burford* abstention. The City's unduly expansive view of *Burford* abstention, if endorsed by this Court, would mark a sea change in circuit precedent. This Court should reverse and remand for the district court to exercise its statutorily conferred jurisdiction.

## JURISDICTIONAL STATEMENT

The City initially filed this suit in the Circuit Court for Baltimore City, asserting claims against Defendants under the City's Consumer Protection Ordinance. JA026. Defendants properly removed the suit to federal court under 28 U.S.C. §§ 1441(a) and 1446, invoking the district court's jurisdiction under 28 U.S.C. § 1332. JA010–020, JA077–078. The City did not contest jurisdiction but nonetheless moved to remand, solely on grounds of *Burford* abstention. JA081–082. The district court granted the City's motion to remand by an opinion and order entered on the docket on November 12, 2025. JA150–160, JA165.

Defendants timely appealed the remand order on November 12, 2025. JA161–164, JA166–169; *see* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction over the district court's remand order under 28 U.S.C. § 1291. *See Bryan v. BellSouth Commc'ns*, 377 F.3d 424, 428 (4th

Cir. 2004) ("[W]here a district court has remanded a lawsuit to state court based on abstention principles, the remand is considered a final order appealable under 28 U.S.C. § 1291.").

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the district court erred by invoking *Burford* abstention to refuse jurisdiction over this case.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. Baltimore's Consumer Protection Ordinance

In 2023, Baltimore joined a growing rank of U.S. cities that have enacted measures that parallel or supplement the enforcement of state and federal consumer-protection laws when it enacted the Consumer Protection Ordinance at issue here.[2] City of Baltimore Ordinance No. 23-266 (2023), https://perma.cc/6WL7-W98J (codified at Balt. City Code art. 2, subtit. 4). Like many other general consumer-protection laws, the Ordinance prohibits businesses and other persons from engaging in "any

---

[2] *See, e.g.*, Press Release, *Mayor Scott Signs Bill to Broaden Consumer Protection in Baltimore* (Oct. 11, 2023), https://perma.cc/J7GG-E9Y4 (noting Chicago, Washington D.C., New York City, and Howard and Montgomery Counties in Maryland as other examples).

unfair, abusive, or deceptive trade practice" in the offer or sale of "consumer good[s], [] consumer realty, or [] consumer service[s]" within the City. Balt. City Code art. 2, § 4-2(1)-(2).

In substance and by design, the only conduct prohibited by the Ordinance was already unlawful under longstanding state law. Specifically, the Ordinance defines the phrase "unfair, abusive, or deceptive trade practices" to "have the meanings stated in Title 13 of [Maryland's] Commercial Law Article," which contains the Maryland Consumer Protection Act (MCPA). Balt. City Code art. 2, § 4-1(13); *see also* Md. Code Ann., Com. Law § 13-101 *et seq*. The MCPA likewise prohibits "unfair, abusive, or deceptive trade practice[s]" in the sale of consumer goods, realty, or services, MCPA § 13-303, and it enumerates specific conduct that qualifies as "[u]nfair, abusive, or deceptive trade practices," *id.* § 13-301(1)–(15).[3]

---

[3] In turn, the MCPA provides that, "in construing the term 'unfair or deceptive trade practices,' due consideration and weight [must] be given to the interpretations of … the Federal Trade Commission Act by the [FTC] and by the federal courts." MCPA § 13-105. Similar to the MCPA, Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a).

Though substantively the same as existing law, the Ordinance provides a set of enforcement tools at the local level that were not previously available. As relevant here, the Ordinance empowers the City Solicitor to conduct investigations, issue subpoenas, and initiate lawsuits seeking injunctive relief and civil penalties of up to $1,000 for each individual violation. Balt. City Code art. 2, §§ 4-3, 4-5.[4] Thus, rather than reflecting any substantive variation, the principal differences between the MCPA and the Ordinance are their geographic scope and means of enforcement. The MCPA applies statewide and is enforced by the Maryland Attorney General and through lawsuits brought by private plaintiffs. *See* MCPA §§ 13-406, 13-408. The Ordinance, by contrast, applies only within the City of Baltimore and is enforced by City officials without State involvement. Balt. City Code art. 2, § 4-2; *cf.* Maryland Const. art. XI-A, § 3 ("[T]he Mayor of Baltimore and City Council of the City of Baltimore or the County Council of said County, subject to the

[4] These civil penalties directly fund the City's budget. *See, e.g.*, Hallie Miller, *Baltimore City Council Members Approve Consumer Protection Bill*, Balt. Banner (Sept. 18, 2023), https://perma.cc/L95V-KCQJ (reflecting City Solicitor's statement that a "key reason[]" for the Ordinance was to "generate more revenue" and avoid "los[ing] out" on monetary recoveries achieved by other municipalities).

Constitution and Public General Laws of this State, shall have full power to enact local laws ....”).

### 2. Enforcement of the Ordinance

Since enacting the Ordinance in 2023, the City has begun litigating affirmative consumer-protection claims against a wide range of out-of-State businesses across numerous industries. In each instance, the City has filed suit in the Circuit Court for Baltimore City and has then vigorously opposed any removal to federal court.

For example, in May 2025, the City brought suit against several companies responsible for manufacturing and marketing one foreign brand of nicotine pouches. *See Mayor & City Council of Balt. v. Philip Morris Int’l, Inc.*, No. C-24-CV-25-003509 (Md. Cir. Ct. Balt. City filed May 7, 2025). The City alleged that those companies engaged in unfair, abusive, or deceptive trade practices by failing to adequately warn the public about the product’s nicotine content; marketing flavors desirable to children and adolescents; and maintaining a customer rewards program. *See* Compl. ¶ 88, *Mayor & City Council of Balt. v. Philip Morris*, No. 25-cv-2177 (D. Md. July 7, 2025), ECF No. 1-2. The defendants removed the suit to federal court on diversity grounds. The City moved

to remand the suit to state court, based on *Burford* abstention. *See* Mot. to Remand, *Mayor & City Council of Balt. v. Philip Morris*, No. 25-cv-2177 (D. Md. Aug. 6, 2025), ECF No. 19. That motion is pending.

In October 2025, the City filed suit against a financial-technology company that offers short-term loans and investment products. *See Mayor & City Council of Balt. v. MoneyLion Techs.*, No. C-24-CV-25-008340 (Md. Cir. Ct. Balt. City). The City alleged that the company engaged in unfair, abusive, or deceptive trade practices by failing to disclose that its cash advances are loans or by charging excessive interest rates. The defendant removed to federal court on both diversity and federal-question grounds. The City moved to remand to state court, again invoking *Burford* abstention. Mot. to Remand, *Mayor & City Council of Balt. v. MoneyLion Technologies*, No. 25-cv-03692 (D. Md. Dec. 10, 2025), ECF No. 27. That motion likewise is pending.

The City has also targeted other industries through suits filed under the Ordinance in the Circuit Court for Baltimore City. *See Mayor & City Council of Balt. v. PepsiCo Inc.*, No. C-24-CV-24-001003 (Md. Cir. Ct. Balt. City filed June 20, 2024) (suit against various companies that sell, distribute, manufacture, or market single-use plastics) (removed to

federal court, then remanded to state court for lack of federal jurisdiction); *Mayor & City Council of Balt. v. Dave, Inc.*, No. C-24-CV-25-010691 (Md. Cir. Ct. Balt. City filed Dec. 30, 2025) (suit against financial technology company).

### B. Procedural History

This case involves yet another suit under the Ordinance, this time against two companies that offer online sports betting. JA025-076, JA151. In April 2025, the City filed this action in the Circuit Court for Baltimore City, alleging that DraftKings Inc. and Flutter Entertainment PLC d/b/a FanDuel Inc.—neither of which is a citizen of Maryland—violated the Ordinance by engaging in unfair, abusive, or deceptive practices that have encouraged disordered gambling on their respective services. JA069–073. The City alleges that Defendants have unlawfully used "sophisticated algorithms" and user data to make personalized offers to users and develop VIP programs; used push notifications, emails, and in-app messages to encourage engagement with their services; provided incomplete disclosure of "material terms and conditions" of promotional offers; and failed sufficiently to exclude or restrict problematic gamblers from their services. JA071–072.

In May 2025, Defendants timely removed this suit to federal court, explaining that no defendant is a citizen of Maryland and that the total amount in controversy exceeds $75,000.[5] *See* 28 U.S.C. § 1332(a)(1).

The City moved to remand. Although the City did not dispute that federal jurisdiction exists, it urged that the district court should "decline to exercise" its federal jurisdiction, invoking *Burford* abstention. Mem. in Supp. of Pl.'s Remand Mot. 1, ECF No. 19-1 (City Remand Mem.). Defendants opposed, explaining that *Burford* abstention is an "extraordinary and narrow exception" to the "federal court's duty to exercise [its] jurisdiction" that "applies only in a narrow category of cases" in which federal adjudication would subvert a State's "administration of a comprehensive regulatory scheme." Opp. at 1-2, ECF No. 30 (quoting *Martin*, 499 F.3d at 363), *see id.* at 2-4 (discussing governing precedent).

[5] The City has confirmed it is seeking more than $100,000 in civil penalties, "exclusive of attorney's fees, interest, or court costs." JA015, JA021–024.

### C. District Court's Decision

In November 2025, the district court granted the City's remand motion and ordered the case remanded to the Circuit Court for Baltimore City. JA160, JA165.

The district court's opinion first recited the general principles governing abstention, observing that federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given," JA152 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)), and noting that judicial abstention doctrines are "extraordinary and narrow exceptions" to that statutory duty, *id.* (quoting *Quackenbush*, 517 U.S. at 728). The district court also acknowledged that courts may abstain under the *Burford* doctrine only when numerous conditions are satisfied, including (*inter alia*) that the case involves "difficult questions of state law bearing on policy problems … whose importance transcends the result in the case then at bar" or that "federal review … would be disruptive of state efforts to establish a coherent policy." JA152 (quoting *NOPSI*, 491 U.S. at 361). And even then, the court acknowledged, abstention is appropriate only when the "importance of [those] difficult state law questions or the state interest

in uniform regulation *outweighs* the federal interest in adjudicating the case at bar." JA152–153 (quoting *Martin*, 499 F.3d at 364).

The district court further acknowledged many case-specific factors that weigh against application of *Burford* abstention here. It recognized that, while *Burford* abstention is designed to prevent undue interference with a comprehensive state administrative scheme, "this case does not challenge any administrative enforcement action." JA157. The court also acknowledged that there are no pending "parallel proceedings" in state court, JA159; *cf. Johnson v. Collins Ent. Co.*, 199 F.3d 710, 723 (4th Cir. 1999), *reh'g and en banc reh'g denied*, 204 F.3d 573 (4th Cir. 2000), and conceded the "fair point" that "the City itself" was responsible for any risks this suit may pose to statewide uniformity, JA158.

The district court also specifically rejected the City's argument that *Burford* abstention was warranted "simply because [this] case involves gambling." JA159. As the court explained, the mere existence of state regulation or a "strong state interest" in the underlying subject matter cannot alone justify abstention. JA153 (quoting *Martin*, 499 F.3d at 369). And the court "wholeheartedly" agreed that *Burford* abstention cannot

be invoked simply because "a case involves a newly enacted state or local law." JA159.

The district court nonetheless concluded that "a confluence of factors … taken together[] warrant abstention" in this case. JA159. The court observed that the City was pursuing its remedies under "a new local statute," predicting that this case would present "disputed questions of state law," including the "proper interpretation of 'unfair' and 'deceptive' conduct in the context of marketing for sports betting." *Id.* The court also expressed concern that a merits ruling in this case would "'effectively establish parallel federal and state oversight' of sports gambling," an activity "that 'powerfully impacts' the welfare of Maryland's citizens." *Id.*

The district court entered an order remanding the case, JA165, which Defendants immediately appealed, JA161–164, JA166–169.

## SUMMARY OF ARGUMENT

This is one in a series of lawsuits by the City of Baltimore, initially brought in the Circuit Court for that City, alleging violations by out-of-State defendants of an ordinance that both mirrors and incorporates the Maryland Consumer Protection Act (MCPA). Congress conferred upon Defendants a statutory right to defend against those claims in federal

court. *See* 28 U.S.C. § 1332(a)(1). Federal courts routinely adjudicate claims under the MCPA, and the City does not argue that the district court here lacked jurisdiction to do so. Nonetheless, the City urged the district court to surrender jurisdiction over this suit (and other pending suits) by invoking a rarely used equitable doctrine—*Burford* abstention—that facially has no application here. The district court erred in accepting that invitation.

I. Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction Congress has conferred on them. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). *Burford* abstention, which is one of only a few "extraordinary and narrow" exceptions to that obligation, *id.* at 728, is rarely available and even more rarely invoked. A district court may abstain under *Burford* only to avoid "interfer[ing] with proceedings or orders of state administrative agencies," and only when a case presents difficult issues of state law that transcend the particular case or when adjudication of the case by a federal court would disrupt state efforts to establish a coherent policy. *New Orleans Pub. Serv., Inc. (NOPSI) v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). And even where, unlike here, those narrow criteria are satisfied,

abstention is appropriate only when the transcendent importance of the legal issues or the state interest in uniform regulation outweighs the federal interest in exercising congressionally conferred jurisdiction.

II. For multiple reasons, *Burford* abstention is not available here.

A. As a threshold matter, *Burford* abstention applies only where federal litigation would interfere with "complex state administrative processes." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *NOPSI*, 491 U.S. at 364). Here, the City's claims allege violations of generally applicable consumer-protection laws—enforced through litigation by private parties and public officials alike—and do not seek to usurp an administrative process or attack any underlying agency order. The heartland of *Burford*, as crafted by the Supreme Court, is cases in which a regulated party invokes federal jurisdiction over a claim that challenges a state administrative order or proceeding. But this case does not involve a challenge to a state administrative order or proceeding—or, indeed, any state administrative order or proceeding at all. Here, the regulated parties are *defendants* responding to consumer-protection claims, not parties seeking to interfere with or circumvent any state

administrative process. No underlying agency proceeding whatsoever is at issue.

B. The additional doctrinal requirements for *Burford* abstention are not satisfied either. This case does not present any difficult issues of state law with importance that transcends the case at bar, but rather, involves application of longstanding statutory standards to the facts of this particular case. Nor does this case threaten disruption of the kind of uniform regulatory system at issue in *Burford*, where the adjudication of one party's rights would interfere with the State's regulation of other non-parties. This Court and other federal courts routinely adjudicate the types of consumer-protection claims at issue here.

C. *Burford* abstention is also foreclosed by the Supreme Court's decision in *Quackenbush*, holding that abstention is permitted only in cases involving equitable or other discretionary relief. Here, the City seeks monetary civil penalties in statutorily specified amounts, not purely equitable relief.

III. None of the district court's stated reasons for remand justified its decision to abstain. The City's assertion that the State has a strong interest in overseeing gambling through administrative regulations is

not implicated in this consumer-protection suit and would not justify abstention here even if it were. The novelty of the enforcement mechanisms conferred by the Ordinance makes no difference to the substantive legal claims that the City seeks to litigate. And none of this Court's past decisions supports, much less requires, abstention on these facts, which do not involve any risk that the federal court's rulings will inhibit enforcement of a state regulatory scheme.

## STANDARD OF REVIEW

This Court "review[s] a district court's decision to abstain under *Burford* for abuse of discretion," and "[a] district court abuses its discretion whenever 'its decision is guided by erroneous legal principles.'" *Martin*, 499 F.3d at 363 (quotation marks omitted). Thus, "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Id.* (quotation marks omitted).

## ARGUMENT

The district court erred in relying on *Burford* abstention to remand this case to state court. Defendants have a statutory right to a federal forum, and nothing about this case supports the district court's invocation of *Burford* abstention. This case does not implicate any

ongoing or completed state agency process, nor does it present a difficult question of state law that would affect cases or parties not before the Court. Rather, like many cases that have been decided in federal courts before it, this case requires application of familiar and longstanding consumer-protection standards to the practices of the two Defendants. This Court should reverse the district court's decision so that it may fulfill its unflagging duty to exercise jurisdiction here.

## I. Federal Courts Must Exercise the Jurisdiction Conferred by Congress, Subject Only to "Extraordinary" Exceptions Not Applicable Here.

"The Supreme Court has repeatedly instructed that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996)). "The right of a party … to choose a Federal court where there is a choice cannot be properly denied." *Id.* at 370 (quoting *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964)). And courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *New Orleans Public Service, Inc. v.*

*Council of New Orleans* (*NOPSI*), 491 U.S. 350, 358 (1989) (quoting *Chicot County v. Sherwood*, 148 U.S. 529, 534 (1892)).

Against that "virtually unflagging obligation," the Supreme Court has recognized only a few "extraordinary and narrow exception[s]." *Quackenbush*, 517 U.S. at 728 (citation omitted). This appeal concerns one such exception—*Burford* abstention—which "is concerned with protecting complex state administrative processes." *NOPSI*, 491 U.S. at 362. This exception, which originated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), arises from the unusually pronounced comity concerns that may be raised when a federal court's exercise of jurisdiction would jeopardize a State's ability to ensure coherent administration of its comprehensive regulatory scheme. *See Quackenbush*, 517 U.S. at 726–27; *NOPSI*, 491 U.S. at 362.

But the Supreme Court has "carefully defined the areas in which such abstention is permissible," and comity concerns warrant abstention only in extraordinary circumstances. *Martin*, 499 F.3d at 363–64 (alteration adopted) (quoting *NOPSI*, 491 U.S. at 359). A "federal court sitting in equity" may "decline to interfere with proceedings or orders of state administrative agencies" by abstaining only if (1) there are "difficult

questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar" or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361 (quotation marks omitted). The Supreme Court has "consistently refused to abstain under *Burford* when neither of these criteria were met." *Martin*, 499 F.3d at 364. This Court similarly has emphasized that "[t]he *Burford* doctrine 'justifies the dismissal of a federal action'" only "in a 'narrow range of circumstances'" that meet "defined specific doctrin[al]" requirements. *Martin*, 499 F.3d at 364 (alteration adopted) (quoting *Quackenbush*, 517 U.S. at 726).

Even in a case where those narrow doctrinal prerequisites were satisfied, this Court has recognized that the presence of one of the *NOPSI* criteria is still not sufficient to justify *Burford* abstention. Rather, courts "may abstain under *Burford* from [their] 'strict duty to exercise' congressionally conferred jurisdiction" only if the "importance of difficult state law questions or the state interest in uniform regulation *outweighs* the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at

364–65 (quoting *Quackenbush*, 517 U.S. at 716, and citing *NOPSI*, 491 U.S. at 362). Critically, given the strength of the federal interest in exercising congressionally conferred jurisdiction, "[t]his balance only rarely favors abstention," and "a strong state interest alone" is not enough. *Id.* at 364, 369.

Moreover, in conducting this weighing inquiry, a court must remain focused on the particular concerns animating *Burford* itself, not engage in *ad hoc* judgments about which forum would be most expedient. "[T]he Supreme Court has *never* allowed abstention to be a license for free-form *ad hoc* judicial balancing of the totality of state and federal interests in a case." *Martin*, 499 F.3d at 364 (emphasis in original).

The consequence is that *Burford* abstention is very rarely applied, even in cases with a strong state interest in the subject matter of the litigation. *See, e.g.*, *Zablocki v. Redhail*, 434 U.S. 374, 379 n.5 (1978) (rejecting *Burford* abstention in dispute concerning State's issuance of marriage licenses); *Martin*, 499 F.3d at 364 (rejecting *Burford* abstention in dispute concerning state gambling regulations); *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 357–58 (4th Cir. 2005) (rejecting *Burford*

abstention in dispute about state solid-waste licensing requirement).[6] As these many decades of precedent reflect, *Burford* abstention "remains the exception, not the rule." *Martin*, 499 F.3d at 363 (quoting *NOPSI*, 491 U.S. at 359).

## II. *Burford* Abstention Does Not Apply Here.

As no party disputes, Congress conferred federal jurisdiction over this case. There is complete diversity among the parties, and the amount in controversy is more than sufficient. JA021–024; *see* 28 U.S.C. § 1332(a)(1). This case thus triggers the federal courts' "strict," "virtually unflagging" duty to exercise the jurisdiction that Congress, under express constitutional powers, has chosen to confer. *Quackenbush*, 517 U.S. at 716; *see* U.S. Const. art. III, § 2.

In this case, as in its other pending cases, the City seeks to override Congress's express decision to give out-of-State defendants the right to proceed in federal court. But, for numerous reasons, this case does not qualify for *Burford* abstention and the district court erred in holding

---

[6] *See generally* William Baude et al., *Hart & Wechsler's The Federal Courts and the Federal System* 1400 (8th ed. 2025) (noting that Supreme Court has repeatedly "continued to consider and reject arguments for *Burford* abstention"); Erwin Chemerinsky, *Federal Jurisdiction* § 12.2.3 (9th ed. 2025) (similar).

otherwise. This case does not implicate review or enforcement of any "complex state regulatory system … which demands local administrative expertise"; indeed, it involves no "state administrative process" at all. *NOPSI*, 491 U.S. at 361–62. The case presents no "difficult questions of state law," but instead alleges violations of familiar and longstanding consumer-protection standards. *Id.* at 361. Resolution of those allegations in a federal court, as opposed to a state court, would in no way "disrupt[] … state efforts" to maintain any uniform regulatory regime, whether with respect to gambling or consumer protection more generally. *Id.* And the City seeks a type of relief—civil penalties—for which *Burford* abstention does not properly apply. *Quackenbush*, 517 U.S. at 719–21. For any or all of those reasons, *Burford* abstention is plainly inappropriate.

### A. This case does not implicate review or enforcement of any "complex state administrative processes."

At the outset, this case is not appropriate for *Burford* abstention at all because the City's claims do not seek to challenge any action taken under a comprehensive administrative scheme. Under governing precedent, it is a necessary (though not sufficient) condition for *Burford* abstention that adjudication in federal court of the claims at issue would

"interfere with the proceedings or orders of state administrative agencies." *NOPSI*, 491 U.S. at 361; *see Martin*, 499 F.3d at 364 (describing *Burford*'s domain as preventing "frustrat[ion]" of "a State's complex administrative system"). The City here seeks to litigate consumer-protection claims under a local ordinance incorporating state law, not to review or circumvent any state administrative determination. As other courts have recognized, "the ability to bring a lawsuit in the [City's] name is not a complex administrative process." *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 317 (5th Cir. 2021); *see id.* (holding that *Burford* abstention did not apply to claims under "statutes [that] authorize litigation, not administration").

As reflected in the Supreme Court's and this Court's repeated discussions over the years, consideration of the specific facts of *Burford* is critical for understanding both the doctrine's purpose and its logical limits. *Burford* concerned a state licensing scheme governing the allocation of rights to drill oil under oil fields in Texas. *See* 319 U.S. at 318–19. Because oil fields involve large pools of oil that underlie the surface areas of multiple operators, absent close state oversight, a single operator could "drain oil from the most distant parts of the reservoir,"

regardless of whether the oil is "from under his own surface area." *Id.* at 319. These "geologic realities" meant that "each oil and gas field must be regulated as a unit." *Id.* The East Texas pool at issue in *Burford* was "giant," involving more than 26,000 wells and 900 operators. *Id.*

To address the challenges of regulating extraction from such a large common pool, Texas created a specially structured scheme of administrative and judicial review in which a state agency and a particular state court participated as "working partners" in the "formation of policy and determination of cases" involving oil production rights. *Id.* at 326, 334. Specifically, Texas delegated "broad discretion" to a single state agency to administer oil-drilling rights, *id.* at 320, and it centralized "all direct review of the Commission's orders" in a single state court, *id.* at 326. The resulting state scheme would have been thrown into "interminable confusion" if federal courts were simultaneously allocating oil-drilling rights in parallel with the state agency and specialized state court. *Id.* Abstention was found to be warranted because any federal-court intervention would "almost certain[ly]" upset Texas's special structure of "unified" decision-making, and thus

"[en]danger … the success of state policies" with respect to the unique problem of oil drilling rights. *Id.* at 333–34.

Recognizing that core purpose, the Supreme Court has always limited *Burford* abstention to cases that directly arise from "complex state administrative processes." *Quackenbush*, 517 U.S. at 727 (quoting *NOPSI*, 491 U.S. at 362); *see also NOPSI*, 491 U.S. at 362 (describing *Burford* abstention as a federal court's decision to "decline to interfere with the proceedings or orders of state administrative agencies"); *Meredith v. City of Winter Haven*, 320 U.S. 228, 235 (1943) (*Burford* protects "domestic policy of the state governing its administrative agencies").

Consistent with Supreme Court precedent, this Court has "[a]ssum[ed] arguendo that *Burford* abstention is limited to cases involving the proceedings and orders of state administrative agencies." *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 351 (4th Cir. 2002). And other federal courts of appeals have squarely recognized that fundamental limitation. *See, e.g.*, *Wm. Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 865 (6th Cir. 2021) (recognizing *Burford*'s heartland as where "federal courts are asked to interfere with state processes by *reviewing*

the proceedings or orders of state administrative agencies"); *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 76 (1st Cir. 2021) (recognizing that interference with "intricate state administrative scheme" is a "'sine qua non' of *Burford* abstention" (quoting *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir. 1990)); *Elec. Reliability Council of Texas, Inc. v. Just Energy Texas, L.P.*, 57 F.4th 241, 249 (5th Cir. 2023) (noting that *Burford* applies only to disputes "arising in complex state administrative schemes"); *Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 845 (9th Cir. 2005) ("*Burford* abstention is concerned with potential disruption of a state administrative scheme …." (quotation marks omitted)).

This case is far afield from *Burford* and the other cases that apply it. The Ordinance "authorize[s] litigation, not administration." *Grace Ranch*, 989 F.3d at 317. No state administrative agency has adjudicated, or is responsible for adjudicating, the particular questions that the City seeks to litigate, *e.g.*, whether offering promotional bonuses or administering customer-rewards programs constitutes an "unfair, abusive, or deceptive" business practice under the MCPA. And no party here is seeking to circumvent any process for centralized administrative

or judicial review. Indeed, no state agency is involved at all, and the City has no role to play in the State's regulatory enforcement of its gambling laws. Rather, the City has directly asserted claims under its Ordinance that repeat general state-law standards in the MCPA, which in turn substantially mirror federal law. *See supra* p. 5 & n.3.

Given the nature of the City's claims, it is of little to no relevance to the *Burford* analysis that Maryland has comprehensive regulations governing sports wagering, and the City's reliance on those regulations is a red herring. The City's own position is that its claims in this litigation are entirely collateral to that scheme. *See* City Remand Mem. 7 ("[T]he City alleges that Defendants are violating the law, *irrespective of whether* Defendants … adhere to [state] regulatory requirements.") (emphasis added). Because no party here is inviting "interfere[nce] with the proceedings or orders of state administrative agencies," *NOPSI*, 491 U.S. at 361, this case is ineligible for *Burford* abstention as a matter of law.

### B. This case does not satisfy the other prerequisites for *Burford* abstention established by the Supreme Court.

Even beyond the threshold problem that this case does not implicate "complex state administrative processes" at all, *NOPSI*, 491

U.S. at 361, this case also does not satisfy the additional doctrinal requirements for *Burford* abstention. As the Supreme Court has explained, *Burford* abstention is categorically unavailable unless (1) the case presents "difficult questions of state law … whose importance transcends the result [of] the case … at bar" or (2) federal resolution would "disrupt[] … state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361 (quotation marks omitted). Courts must "refuse[] to abstain under *Burford* when neither of these criteria [are] met." *Martin*, 499 F.3d at 364. That is the case here.

### 1. This case presents no "difficult," "transcend[ent]" questions of state law.

First, this case presents no "difficult questions" of state law with significance that "transcends" the particular business practices at issue. *NOPSI*, 491 U.S. at 361.

**a.** As noted, this is one of several recent suits brought by the City under its Ordinance alleging unlawful trade practices by various businesses. *See supra* pp. 7-9. By design, the Ordinance does not proscribe any previously lawful conduct, but instead incorporates the extant definitions of the "unfair, abusive, and deceptive trade practices"

already prohibited the MCPA. *See* Balt. City Code art. 2, § 4-1(13); MCPA § 13-303. The MCPA has existed substantially in its present form for more than fifty years. *See Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub. Co.*, 501 A.2d 48 (Md. 1985) (discussing history of MCPA's enactment).

Federal courts routinely interpret and apply consumer-protection statutes, including the relevant MCPA provisions[7] and their federal analogues. They require no specialized expertise to apply. Indeed, in Maryland as elsewhere, private plaintiffs may sue to enforce the law without any involvement by government officials. As the Fifth Circuit recently observed, there are "no … cases in which a federal court [has] abstain[ed]" from suits brought by "[a] private party pursuing state

[7] *See, e.g.*, *Roberts v. Equian, LLC*, 793 F. Supp. 3d 643, 661–62 (D. Md. 2025); *Bowers v. Legum & Norman Realty, Inc.*, 776 F. Supp. 3d 294, 309–10 (D. Md. 2025); *Cooper v. I.Q. Data Int'l, Inc.*, No. CV RDB-24-2120, 2025 WL 1827956, at *5–6 (D. Md. July 2, 2025); *Lusko v. Newrez, LLC*, No. CV GLR-23-3168, 2024 WL 3618507, at *8 (D. Md. Aug. 1, 2024); *Prince v. Harbor Bank of Balt.*, No. CV MJM-23-2403, 2024 WL 3360658, at *4 (D. Md. July 9, 2024); *Jones v. Specialized Loan Servicing, LLC*, No. CV RDB-22-1987, 2023 WL 1442435, at *3–4 (D. Md. Feb. 1, 2023); *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477–79 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023); *Wright v. Willow Lake Apts. (MD) Owner, LLC*, 648 F. Supp. 3d 647, 662 (D. Md. 2023); *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 652–53 (D. Md. 2023).

consumer protection or antitrust claims removed to federal court on diversity grounds." *Grace Ranch*, 989 F.3d at 319.

That the Defendants' underlying industry is subject to extensive state regulation is of no moment. This Court and other federal courts have adjudicated, and rejected, *Burford* abstention in consumer-protection disputes even within regulated industries. In *Country Vintner of North Carolina, LLC v. E&J Gallo Winery, Inc.*, 461 F. App'x 302 (4th Cir. 2012), this Court rejected an argument that remand was required under *Burford* even though the plaintiff's claims involved the state regulation of alcohol and the plaintiff itself had separately sought relief before the North Carolina Alcoholic Beverage Control Commission. *Id.* at 304-05. And this Court encountered no trouble addressing the relationship between the State's general consumer-protection law and its separate comprehensive alcohol regulations. *Id.* at 305-06.

Similarly, the district court in *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575 (D. Md. 2014), applying this Court's precedents, refused to abstain under *Burford* and proceeded to address the merits of an MCPA claim, despite the "comprehensive legislative and regulatory scheme involving the disclosure requirements for automobile dealers

selling cars in the State of Maryland." *Id.* at 608-09, 621–22. The court explained that "federal courts frequently apply state law principles in resolving disputes" and that no party had "identifi[ed] difficult questions of state law whose importance transcends the results of the case at bar." *Id.* at 609.

Other courts of appeals have similarly refused to abstain under *Burford* from deciding consumer-protection disputes. *See also, e.g.*, *Casey v. F.D.I.C.*, 583 F.3d 586, 592 (8th Cir. 2009) (rejecting *Burford* abstention in case involving Missouri laws regulating fraud in commerce and unauthorized practice of law); *Time Warner Cable v. Doyle*, 66 F.3d 867, 874 n.6 (7th Cir. 1995) (rejecting *Burford* abstention in case involving Wisconsin's "unfair trade practices law"); *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *2–3 (5th Cir. Mar. 28, 2011) (same as to Texas law). Simply put, the statutory framework underlying the City's claims is neither complex nor unique, and federal courts have an extensive history of adjudicating similar claims.

**b.** The mere fact that the City is relying on a state-law cause of action is also no basis for *Burford* abstention, and the district court erred in declining to exercise jurisdiction because it was "being asked to answer

disputed questions of state law." JA159. Federal courts' exercise of jurisdiction to decide questions arising under state consumer-protection law reflects their obligation to interpret and apply state law more generally when sitting in diversity, as well as in other cases where state-law issues arise. "[I]t has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment." *Meredith*, 320 U.S. at 234. As this Court has repeatedly recognized, "applying [state law] is squarely within [its] purview." *Shook v. NCG Acquisition, LLC*, 114 F.4th 242, 250 (4th Cir. 2024). Indeed, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Disputed questions of state law, naturally, arise with frequency in cases brought to federal court on the basis of diversity jurisdiction, as in *Erie* itself.

Against this backdrop, the Supreme Court and this Court have repeatedly made clear that *Burford* is an "extraordinary and narrow exception." *Quackenbush*, 517 U.S. at 728; *Martin*, 499 F.3d at 363. The "difficult questions of state law" that *NOPSI* contemplates as potentially

warranting abstention cannot be the ordinary tasks of adjudication inherent in every diversity case. 491 U.S. at 363. Indeed, if applying well-established state law to a novel set of facts were deemed sufficiently "difficult" to warrant *Burford* abstention, abstention would vitiate diversity jurisdiction and transform *Burford* into the "rule," not the "exception." *Martin*, 499 F.3d at 363 (quoting *NOPSI*, 491 U.S. at 359).

**c.** In all events, any perceived "difficult[y]" in applying the Ordinance here does not raise *Burford* concerns because the interpretive question does not "transcend … the case … at bar" in the manner contemplated by precedent. *NOPSI*, 491 U.S. at 361. The parties' dispute is limited to particular marketing practices of two online sports-betting businesses. Unlike in *Burford*, adjudication of this case will not determine the rights of any others not before the Court. *Burford*, 319 U.S. at 319 (explaining that it was essential for "each oil and gas field" to "be regulated as a unit" through centralized adjudicative processes to protect the rights of third parties to the same field); *Grace Ranch*, 989 F.3d at 317 (*Burford* protects "interdependent schemes . . . from federal judicial intervention" and is not applicable to a "suit [that] stands or falls on its own"). Adjudication of this case, should it reach the merits, will

simply resolve whether Defendants' specific business practices are permissible under a city ordinance that incorporates state-law standards.[8]

**d.** Moreover, even the possibility that a difficult issue of state law could arise in the case would not warrant abstention. That is because the district court—or, if necessary, this Court on appeal—could invoke certification, a process that "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997); *see* Md. Code Ann., Courts § 12-603 (empowering "a court of the United States" to certify "determinative" "question[s] of law" to the Maryland Supreme Court).[9] As other courts of appeals have recognized, the

[8] It is by no means clear that the court will need to reach those questions. For example, the Ordinance facially appears not to apply to Defendants' businesses at all, insofar as the Ordinance covers only "consumer good[s], [] consumer realty, or [] consumer service[s]" as defined in Section 4-2(1)-(2) of the Ordinance.

[9] Federal district courts routinely certify questions to the Maryland Supreme Court. *See, e.g.*, *Martinez v. Amazon.com Servs. LLC*, No. CV 22-00502-BAH, 2024 WL 4817214, at *14–15 (D. Md. Nov. 18, 2024), *certified question answered*, 338 A.3d 636 (Md. 2025); *Anne Arundel County v. Express Scripts, Inc.*, No. CV MJM-24-90, 2025 WL 254807, at *10 (D. Md. Jan. 21, 2025).

availability of modern certification procedures "substantially accommodates the federalism interests" that originally animated the creation of *Burford* abstention and related doctrines. *Grace Ranch*, 989 F.3d at 319. Indeed, those "certification procedure[s] arose in response" to federal courts' "being too quick to abstain" from "deciding difficult, unsettled questions of state law." *Id.* at 315 (quotation marks omitted).

As a result, in more recent times, courts of appeals have repeatedly refused to allow *Burford* abstention on the difficult-issue-of-state-law rationale because certification was a better alternative. *See, e.g.*, *Rhode Island Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*, 92 F.4th 330, 348 (1st Cir. 2024) (rejecting *Burford* abstention while certifying state-law question to state appellate court, embracing "certification as a cheaper, faster, and simpler alternative to abstention"); *S. California Edison Co. v. Lynch*, 307 F.3d 794, 806 (9th Cir. 2002) (similar); *Pittman v. Cole*, 267 F.3d 1269, 1285 (11th Cir. 2001) (holding that district court abused its discretion in ordering *Pullman* abstention because "the more appropriate procedure … is certification of those issues to the Alabama Supreme Court"). Consistent with that approach, this Court has recognized that the *unavailability* of certification in particular States (not at issue here)

can be a significant factor weighing in favor of abstention. *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 284 (4th Cir. 2008).

#### 2. There is no risk that the federal district court will "disrupt[] … state efforts to establish a coherent policy" in this case.

This case does not implicate the second prong of *NOPSI*, which allows *Burford* abstention only in the extraordinary circumstance when parallel federal litigation could threaten the "coherenc[e]" of a state regulatory scheme. 491 U.S. at 361. As discussed, *Burford* itself concerned such a situation: A federal court's intervention in just one case would change the oil available in the single "giant pool" available to all drillers, thereby preventing Texas from "establishing a coherent policy." 319 U.S. at 319. Federal intervention there also would have bypassed the single state court with specialized jurisdiction. *Id.* at 325–26. Indeed, the "whole cycle of federal-state conflict," as the *Burford* Court described it, had real practical consequences in that case, with the Governor of Texas going so far as to "declare martial law" due to acrimony between the federal courts, on the one hand, and the Texas legislature, agency, and courts on the other. *Id.* at 329–31. Abstention was warranted to put

an end to the conflict and avoid eviscerating Texas's "unified method for the formation of policy and determination of cases." *Id.* at 334.

This case presents no similar concerns. As discussed above, the City's claims do not arise from the operation of any state administrative apparatus. The City does not, for example, purport to bring claims within the competence of any state agency or regulator, such as the Maryland Lottery and Gaming Control Agency. *See* JA069–073. Instead, it sues under a consumer-protection statute, *see* JA069–073, whose state-law analogue is enforced through litigation by private and public parties alike. Federal adjudication here also would not usurp the jurisdiction of "specially authorized state courts" or otherwise "upset a carefully crafted and integrated" scheme of judicial review. *Educ. Servs., Inc. v. Maryland State Bd. For Higher Educ.*, 710 F.2d 170, 173 (4th Cir. 1983); *accord, e.g.*, *Grace Ranch*, 989 F.3d at 318 (*Burford* abstention disfavored if State "provides no special forum for judicial review"); *City of Tucson v. U.S. W. Commc'ns, Inc.*, 284 F.3d 1128, 1134 (9th Cir. 2002) (similar). And adjudicating the parties' rights in federal court runs no risk of impairing the rights of other regulated parties. Absent such systemic concerns, *Burford* is not implicated.

The district court's purported concern for uniformity has nothing to do with the federal forum. The district court noted that it could "ultimately … conclude that conduct is permitted by the state regulations but violates the CPO," which would mean that "certain conduct is lawful in some parts of the state but not in Baltimore City." JA158. It is unclear why that would be true given that the Ordinance generally incorporates the MCPA's substantive standards. *See supra* p. 5. In all events, any prospect of disuniformity is due solely to the City's choice to enact a purportedly local ordinance, applicable only to one municipality; and any lack of uniformity could come to pass whether this case is resolved in state or federal court. *Cf. Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013) (rejecting abstention where, *inter alia*, "it is the Town, not the federal courts, that has interfered with North Carolina's governance of public trust lands"). As to forum choice, the federal courts, with their broader jurisdiction and powers of certification, are perhaps better positioned to address any concerns of statewide uniformity that arise in this particular context.

There is also no imminent risk of any interference with pending state court adjudication. Comity concerns are heightened under *Burford*

in cases where parallel state and federal adjudications threaten to yield inconsistent or contradictory results. *Cf. Johnson v. Collins Ent. Co.*, 199 F.3d 710, 724 (4th Cir. 1999) (emphasizing pendency of parallel litigation in state court as factor favoring abstention). But here, the City has not identified—and Defendants are likewise unaware of—any pending litigation in Maryland court involving the legality of Defendants' business practices. *See, e.g.*, *Deal v. Tugalo Gas Co.*, 991 F.3d 1313, 1326-27 (11th Cir. 2021) (rejecting *Burford* abstention where "there was (and is) no ongoing state administrative proceeding" or "state court" action).

In fact, to the extent there is any other litigation involving similar legal and factual issues, it has been litigation in *federal* court, also brought under state consumer-protection statutes and premised on diversity jurisdiction. *See, e.g.*, *Macek v. DraftKings, Inc.*, No. 2:25-cv-3632 (E.D. Pa. filed July 15, 2025) (challenging "Bonus Bets" under Pennsylvania consumer-protection statute); *Youngs v. DraftKings, Inc.*, No. 2:25-cv-179 (D.N.J. filed Jan. 7, 2025) (same under New Jersey consumer protection statute); *Patel v. FanDuel, Inc.*, No. 1:24-cv-7402 (S.D.N.Y. filed Oct. 1, 2024) (same under New York law). And such suits are already being resolved without presenting any comity concerns. *See*

*DeLeon v. DraftKings, Inc.*, No. 25-cv-644, 2025 WL 3551627 (S.D.N.Y. Dec. 11, 2025) (dismissing claims challenging VIP Hosts and Bonus Bets under New York law). If *Burford* abstention was not required in those cases, it should not be appropriate here.

### C. The relief requested precludes abstention.

The reasons set out above suffice to establish that *Burford* abstention is not available in this case. But the City's attempt to evade federal jurisdiction faces yet another problem: *Burford* abstention is available only for suits that seek "equitable or discretionary" relief. *Quackenbush*, 517 U.S. at 730.

In *Quackenbush*, the Supreme Court explained that *Burford* abstention—"an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it"—accords with "the common-law background against which the statutes conferring jurisdiction were enacted." 517 U.S. at 717, 728 (quotation marks omitted). Under that background, a federal court "has the authority to decline to exercise its jurisdiction" only "when it is asked to employ its historic powers as a court of equity." *Id.* at 717 (quotation marks omitted). Consistent with those equitable origins, the Supreme Court

has never permitted a federal court to "dismiss the federal suit altogether" when the relevant "action" arises "at law." *Id.* at 719.

Those principles preclude—or at minimum weigh strongly against—abstention here. The City seeks both equitable remedies and remedies "at law": it demands not just an injunction, but also civil penalties, which it included in a demand for "[o]ver $100,000" in "monetary damages." JA023. As the Supreme Court squarely held in *Tull v. United States*, 481 U.S. 412 (1987), "at common law," civil penalties "could only be enforced in courts of law." *Id.* at 422. "[W]hile a court in equity may award monetary restitution as an adjunct to injunctive relief, it may not enforce civil penalties." *Id.* at 424; *see also SEC v. Jarkesy*, 603 U.S. 109, 120-121 (2024).[10]

Even if *Burford* abstention could be justified in some cases involving civil penalties, *cf. Quackenbush*, 517 U.S. at 717 (extending

[10] *Tull* and *Jarkesy* both addressed whether defendants in federal civil-penalty proceedings have a right to trial by jury under the Seventh Amendment. That particular federal constitutional right has not been incorporated against the States, so analysis of jury-trial questions in state court is governed by state law. *Cf., e.g.*, *Consumer Prot. Div. v. Morgan*, 874 A.2d 919, 956–59 (Md. 2005) (noting that Seventh Amendment is inapplicable and finding no right to trial by jury for administratively pursued civil-penalty claims).

*Burford* abstention to "discretionary" relief), it is not justified here. The driving motivator of this litigation is not the City's desire to restore adherence to some regulatory rules but, rather, to extract monetary penalties. *See supra* pp. 6 & n.4, 10 & n.5. The City here has made clear its intention to seek the "maximum amount of statutory penalties available." JA074; *cf.* Balt. City Code art. 2, § 4-3(a) (setting maximum of $1,000 per violation). Where, as here, the point of the litigation is to impose a punitive monetary award, Defendants' own equitable interests in securing a federal forum carry substantially more weight. *Cf. Martin*, 499 F.3d at 370 (reiterating that "[t]he right … to choose a Federal court where there is a choice cannot be properly denied" (quoting *England*, 375 U.S. at 415)).

## III. The District Court Erred In Refusing Jurisdiction.

The district court erred in invoking *Burford* abstention rather than fulfilling its statutory duty to resolve this dispute.

The district court's refusal to exercise jurisdiction is particularly striking in that most of its opinion is devoted to acknowledging the reasons why abstention would be inappropriate. For example, the court acknowledged that federal courts have a statutory duty to exercise their

jurisdiction; that abstention doctrines are "extraordinary and narrow exception[s]" to that duty; and that *Burford* abstention is permitted only when specific, circumscribed doctrinal requirements are met. JA152 (brackets in original). And the court acknowledged many (though not all) of the case-specific factors that cut against abstention here, including that the City's claims implicate no "administrative enforcement action," that there are no "parallel proceeding" in state court, that any concerns about statewide disuniformity are attributable to the City and not to Defendants or the federal forum, and that a mere "strong state interest" in regulating gambling is obviously not enough. JA153, JA157, JA159.

Against that backdrop, the district court offered only a single paragraph of cursory discussion about the "confluence of factors" that, in its view, "taken together" warranted abstention. JA159. But none of those considerations, individually or collectively, demonstrates that this case meets the criteria for the "extraordinary and narrow exception" of *Burford* abstention. *Martin*, 499 F.3d at 363.

### A. Maryland's "strong state interest" in gambling regulation is neither threatened here nor sufficient for abstention.

The apparent foundation of the district court's decision was its perception of Maryland's strong interest in regulating gambling. JA157. The court suggested that "sports betting" is "an issue that 'powerfully impacts' the welfare of Maryland's citizens," that it amounts to a "multi-million-dollar industry," and that it implicates the State's "police power." JA159–160. But for multiple reasons, that factor cannot justify abstention.

First, as this Court squarely held in *Martin*, the fact that a case implicates "state regulation of gambling" is emphatically not enough to justify abstention. 499 F.3d at 369. "[B]oth the Supreme Court and this [C]ourt have specifically rejected the view that a strong state interest alone could justify *Burford* abstention." *Id.* Rather, *Burford* abstention is permissible only when the case falls into the "defined specific doctrine[]" delineating *Burford*'s limited domain. *Id.* at 364. And, as explained above, this case fails in multiple respects to satisfy those doctrinal requirements.

Second, this case does not even threaten to interfere with Maryland's interest in regulating gambling. As explained, the City seeks to enforce an Ordinance incorporating the MCPA's general standards—standards that public and private plaintiffs alike routinely invoke in litigation—prohibiting "unfair," "abusive," or "deceptive" practices. The fact that those general standards have not as yet been tested against Defendants' specific business practices does not distinguish this case from any other consumer-protection suit brought under the MCPA or Ordinance. *Cf., e.g.*, *Grace Ranch*, 989 F.3d at 318-19 (emphasizing it is not "enough" to justify *Burford* abstention that "[a] case involves state law claims, with the potential need to decide an unsettled question of state law, in an area of general importance to the State"). The City cannot defeat federal jurisdiction in this, and every other, consumer-protection lawsuit it brings simply by appealing to the purported strength of the State's interests in some collateral regulatory scheme. *See supra* pp. 29-32.

The district court fundamentally erred in ruling that the task of applying local consumer-protection law to businesses facilitating sports betting would somehow trench on the State's administrative scheme of

gambling regulation. The City itself expressly asserts that Defendants' conduct is unlawful "irrespective" of their compliance with those regulations. City Remand Mem. 7. And even if Defendants choose to highlight their compliance with those state regulations, it is not clear that any specific legal question involving those regulations will even require resolution, let alone be resolved in a "disruptive" manner. *See supra* pp. 29-41.

Compounding its error, the district court denigrated the federal interests in exercising federal jurisdiction over this case, characterizing them as "limited or nonexistent." JA160. That is fundamentally wrong. Even "[i]n the ordinary diversity case," "there are paramount federal interests in having federal courts resolve questions of state law and accord protection to out-of-state parties." *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). "The judicial Power" of the United States expressly encompasses "controversies … between citizens of different states," U.S. Const. art. III, § 2, and Congress exercised its constitutional authority to confer that power on federal district courts, U.S. Const. art. III, § 1; *see* 28 U.S.C. § 1332. "Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible

bounds." *NOPSI*, 491 U.S. at 359. It is precisely because of that congressional determination that, as this Court has emphasized, "abstention is the exception, not the rule." *Martin*, 499 F.3d at 363 (quoting *NOPSI*, 491 U.S. at 359).

When applying *Burford*, "[c]ourts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar." *Martin*, 499 F.3d at 364. Here, the district court failed to account for the strength of the federal interest in adjudicating the case while mistakenly believing that this suit imperils the uniformity of Maryland's regulatory scheme governing gambling.

### B. The novelty of the Ordinance is irrelevant.

The district court similarly erred in finding abstention was warranted because this case concerns "a new local statute in the context of a civil enforcement action brought by that local jurisdiction." JA159–160. As discussed, the City designed this "new local statute"—the Ordinance—to be simply another tool for enforcing the same consumer-protection standards that have long been applied under MCPA. *See*

*supra* pp. 5-6, 29-30. The Ordinance does not create any new legal obligations that courts have no experience interpreting and applying. The bare fact that this case may require the Court to "answer disputed questions of state law," JA159, does nothing to differentiate it from the mine run of diversity cases. The need to adjudicate state law does not "afford a sufficient ground for a federal court to decline to exercise its jurisdiction." *Meredith*, 320 U.S. at 234. And the duty of federal courts to exercise congressionally bestowed jurisdiction does not disappear when a local government seeks to enforce a local law against an out-of-State defendant, as the district court believed. *See* JA159–160. Far from creating a loophole in diversity jurisdiction, that is exactly the scenario in which a federal forum may be of the most benefit to a nonlocal defendant.

Relatedly, the district court erroneously disregarded the fact that this case involves no complex scheme for administrative enforcement by reasoning that "this case itself IS an enforcement action brought by the City to enforce its new statute." JA157. As already explained, *see supra* pp. 23-28, *Burford* abstention is designed to protect state administrative processes, not state court litigation. "[T]he ability to bring a lawsuit in

[the City's] name is not a complex administrative process." *Grace Ranch*, 989 F.3d at 317.

### C. This Court's decision in *Johnson v. Collins Entertainment Co.* does not justify abstention here.

Finally, the district court erred in construing this Court's 1999 decision in *Johnson v. Collins Entertainment Co.* to permit abstention. For numerous reasons overlooked by the district court, the Court's decision in *Johnson* does not come close to justifying abstention here.

First, the plaintiffs in *Johnson* sought to directly enforce a state gambling law—namely, a statutory daily payout limit on video poker operators. 199 F.3d at 715. Although the case also included an ancillary consumer-protection claim, the plaintiffs' principal challenge required interpretation of that "ambiguous" daily payout law—and sought an order enforcing their interpretation of that law. *Id.* at 718 (noting State Attorney General's view that statute was "susceptible to at least three different interpretations"). And at the same time, there was parallel litigation in state courts addressing the very same legal issues. *Id.* at 721; *see also id.* at 731 (Luttig, J., concurring only in the judgment) (emphasizing related "proceedings pending in the state supreme court"); *Johnson v. Collins Ent. Co.*, 204 F.3d 573, 575 (4th Cir. 2000) (Wilkinson,

J., concurring in denial of en banc) (reiterating that same legal questions were pending in state court "at the very time the district court rendered its pronouncements"). Here, by contrast, the City does not allege a violation of (nor seek to enforce) any state gambling rules, and there is no parallel state-law litigation.

Second, *Johnson*'s conclusion that failing to abstain was an abuse of discretion was premised in substantial measure on the district court's extraordinary remedial order. *See* 199 F.3d at 723–27. Despite the absence of any statutory authority to do so, the court had imposed on a subset of defendants an "extensive set" of measures resembling "exactly the types of requirements ordinarily prescribed by state statutes or state enforcement agencies," including notice and recordkeeping mandates entailing "detailed, signed logs containing personal information about each recipient" of gambling payouts. *Id.* at 724. That relief, which the court considered justified as an "exercise of federal equitable discretion," effectively "supplanted the legislative, administrative, and judicial processes of South Carolina." *Id.* at 719. As then-Chief Judge Wilkinson later explained, the lynchpin of the panel ruling was its rejection of the district court's "assumption of state regulatory prerogatives." 204 F.3d

at 575 (Wilkinson, J., concurring in denial of en banc review); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004) (distinguishing *Johnson* on this basis in the course of rejecting *Burford* abstention in another gambling dispute).[11]

Finally, as the panel majority in *Johnson* emphasized, its decision broke no new legal ground. The decision turned on "a specific and detailed analysis of the[] particular facts and circumstances" of that case and did not "pav[e] the way for unconstrained expansion of the *Burford* abstention doctrine." 199 F.3d at 728 n.7; *see also* 204 F.3d at 576–77 (Wilkinson, J., concurring in denial of rehearing en banc) (reaffirming

[11] Particularly striking was the enforcement discretion that the district court in *Johnson* had arrogated. The court chose to impose its new regulatory mandates on only eight "target[s]" among the sixty named defendants. 199 F.3d at 718, 725. Yet under state law, the relevant enforcement decisions expressly rested with state agencies who are "invested by statute with the authority to enforce state gaming laws." *Id.* at 723; *see also id.* at 732 (Luttig, J., concurring in the judgment). As then-Chief Judge Wilkinson later emphasized when summarizing the key grounds for the panel's opinion, the district court's "commandeering of state enforcement efforts" had demonstrated "selective enforcement"; had "supplanted the efforts of the state agencies charged with the enforcement of the regulatory scheme"; and had contradicted the stated position of the state attorney general in the litigation that "regulatory oversight" should lay with "the administrative arm of state government." 204 F.3d at 575–76 (Wilkinson, J., concurring in the denial of rehearing en banc).

that panel's analysis depended "on an examination of the totality of the particular circumstances present in the given case"). Judge Luttig concurred only in the panel's judgment precisely because he feared that the more "expansive statements" contained in the panel opinion's dicta might give lower courts the incorrect impression that the opinion expanded the scope of *Burford* abstention. 199 F.3d at 729 (Luttig, J., concurring in judgment). Indeed, to treat *Johnson*'s dicta as elaborating a new set of substantive principles would go beyond "even the most expansive understanding of the *Burford* doctrine." 204 F.3d at 577 (Motz, J., dissenting from denial of rehearing en banc).

This Court's later decision in *Martin* conclusively confirmed that *Johnson* did not announce a rule that abstention is warranted in any case involving state-regulated gambling.[12] The district court in *Martin* had initially invoked *Johnson* as authority to abstain from another dispute concerning South Carolina gambling regulations. *See Martin v. Stewart*, 438 F. Supp. 2d 603 (D.S.C. 2006). But this Court reversed, and in so doing, specifically rejected the lower court's reading of *Johnson*. This

[12] The narrow compass given *Johnson* is underscored by the fact that en banc reconsideration of that case was denied by tied vote among voting members of the Court. *See* 204 F.3d at 573.

Court observed that "[w]e did not abstain in [*Johnson v.*] *Collins*" simply "*because* it involved the regulation of th[e] important state interest" in gambling, emphasizing that "[a]bstention on that basis would be improper." *Martin v. Stewart*, 499 F.3d at 369. Rather, this Court had abstained because "the criteria for *Burford* abstention were met," including that the detailed injunctive "relief sought [in *Johnson*] would 'effectively establish parallel federal and state oversight of the state video poker industry.'" *Id.* (brackets omitted) (quoting *Johnson,* 199 F.3d at 724). No such concern about parallel proceedings is presented by the City's consumer-protection claims in this case, and the district court erred in concluding otherwise. JA159.

This Court's *Martin* decision also clarified that *Johnson* does not allow courts to invoke *Burford* abstention based on the kind of open-ended weighing of a "confluence of factors" that the district court engaged in here. *Cf.* JA159. Rather, "[t]he Supreme Court"—and this Court—have "never allowed abstention to be a license for free-form *ad hoc* judicial balancing of the totality of state and federal interests in a case." *Martin*, 499 F.3d at 364. This Court's decision in *Martin*, including its interpretation of *Johnson*, is the governing law of this Circuit, and

appropriately reflects the Court's determination not to "chart[] its own course in the area of federal court abstention" in a way that departs from both "statute and [] Supreme Court precedent." *First Penn-Pac.*, 304 F.3d at 351 (Luttig, J., dissenting).

## CONCLUSION

For the foregoing reasons, the district court's order remanding this case to state court should be reversed.

Respectfully submitted,

/s/ Sarah E. Harrington
Sarah E. Harrington
Jeffrey E. Sandberg
Gary Rubman
Nicole Agama
Ryan S. Sandler
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
sharrington@cov.com

*Attorneys for Defendant-Appellant Flutter Entertainment PLC*

Richard R. Patch
Christopher J. Wiener
Sarah E. Peterson
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street,
Suite 3000
San Francisco, CA 94104
(415) 391-4800
ef-rrp@cpdb.com

*Attorneys for Defendant-Appellant DraftKings Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants respectfully request oral argument and believe that it would materially assist the Court in deciding the issue presented in this case.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 10,855 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.